IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK BOUWMAN and TATAYANA,
BOUWMAN,

                    Plaintiffs,

       v.

RBC MORTGAGE COMPANY, an
Illinois corporation, ACCREDITED
HOME LENDERS, INC., a California
corporation, COUNTRYWIDE HOME
LOANS, INC., a New York corporation,
and SPECIALIZED LOAN SERVICING,
LLC, a Delaware corporation,

                    Defendants.

_____

CV.  05-1560-AS

FINDINGS AND
RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

      Presently before the court are two motions filed by defendants Accredited Home Lenders,

Inc., Countrywide Home Loans, Inc., and Specialized Loan Servicing, L.L.C. (collectively

"Defendants").  The first is a motion to supplement Defendants' answer to include an affirmative

defense and counterclaim for settlement and release. The second is a motion for summary judgment

Page -1- FINDINGS AND RECOMMENDATION                              *{SIB}*

to enforce the terms of a settlement agreement and dismiss the action in its entirety and to dismiss

Countrywide Home Loans, Inc., ("Countrywide").

Background

Plaintiffs Mark and Tatyana Bouwman (collectively "Plaintiffs") purchased a home in April

2004 and obtained a first-time home buyer's loan through defendant RBC Mortgage Company

("RBC"). Four months later, RBC's agent contacted Plaintiffs and convinced them to refinance

under less desirable terms (the "Loan"). In July 2005, Plaintiff notified RBC and Defendants of their

intent to rescind the Loan under the provision of the Truth in Lending Act (15 U.S.C. § 1602(f) and

Regulation Z, 12 C.F.R. § 226.2(a)(17)(the "Act") and, on September 12, 2005, filed an action in

the Circuit Court of the State of Oregon for the County of Multnomah. RBC and Defendants timely

removed the action to this court. Plaintiffs have not made any payments on the Loan since July

2005.[1]

In July 2006, the parties attempted to settle this case with the help of a mediator. At the

conclusion of the mediation, all parties thought that they had reached a full and complete settlement

of the claims and executed a Memorandum of Essential Terms providing that:

$24,793 statutory damages to Tatyana & Mark Bouwman and their attorney.[2]

$30,000 in attorney fees payable to Hope with 1099 to her.

Lender to use best efforts to effectuate post rescission demand credit repair subject
to Specialized/Countrywide.

---

[1]After notifying Defendants of their intent to rescind the Loan, Plaintiffs began
depositing their monthly mortgage payment into their attorneys client trust account.

[2]This sum represents the amount paid on the Loan prior to filing the intent to rescind the
Loan.

Payment w/in 14 days of final documents.

Release of Lenders
        Covenant not to sue First American
        Dismissal w/ prejudice of lenders

Reaffirmation of loan on existing terms.  First payment due on first payment date due under note after final documents.

This Agreement is enforceable and will be followed by a final agreement.

Salyer Aff., Exhibit 1.

There is no dispute that the parties agreed that the Plaintiffs would be reimbursed the amounts paid under the Loan prior to the notice of rescission and that they would not be obligated to make any payments under the Loan until after the final settlement documents were signed. The difference of opinion arises with regard to the accumulation of interest between the rescission date and the date the first payment is due.  Plaintiffs allegedly understood that their obligation to pay interest under the Loan would not start until after the final settlement documents were signed.  In other words, they considered the new start date for the Loan to be after the execution of the settlement documents and thought that they would be relieved of any mortgage obligations until that time.  Defendants, on the other hand, thought that the new origination date on the Loans would be July 15, 2005, the date of the rescission, and that interest would accrue from that date even though payments would not be made until after the final settlement documents were executed.

This alleged misunderstanding became apparent during the drafting of the final settlement documents.  Defendants' counsel prepared the original draft of the documents, which provided that:

> The Bouwmans hereby revoke their notice of rescission of the Bouwman Loans, the validity of which is disputed by the Lender Defendant, and reaffirm the obligations on the First Note, First Trust Deed, Second Note, and Second Trust Deed, as described and identified above, copies of which are attached hereto as Exhibits 1 through 4.  This reaffirmation shall be effective as of August 9, 2006.  The

> Bouwmans acknowledge and agree that as of September 1, 2006,: (a) the principal balance due under the terms of the First Note is $169,096.85, and interest shall accrue on this principal balance from the Rescission Date at the adjustable interest rate specified in the First Note; (b) the principal balance due under the terms of the Second Note is $31,469.63, and interest shall accrue on this principal balance from the rescission Date at the interest rate specified in the Second Note; (c) the Bouwmans shall make regular monthly payments of the First Note and Second Note commencing September 1, 2006, and on the first day of each month thereafter, in the amounts set forth in the First Note and Second Note, respectively; (d) the First Trust Deed and Second Trust Deed remain in full force and effect and continue to be valid subsisting first and second liens, respectively, encumbering the Property as security for all amounts owing under the First Note and Second Note, respectively, and all obligations owing under the First Trust Deed and Second trust Deed, respectively.

Salyer Aff., Exhibit 2 at Page 3. Plaintiff's counsel reviewed the drafts and expressed concern over the principal balances and the incomplete credit reporting terms. A few weeks later, she also informed Defendants' counsel that Plaintiffs did not believe that they were required to pay any accrued interest. The parties have been unable to resolve this issue.

<u>Legal Standard</u>

**Motion to Supplement Answer**

After the period for amendment of a pleading has passed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). If the transactions or occurrences have happened since the date of the complaint, a party may serve a supplemental pleading. Fed.R.Civ.P. 15(d). "If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor." <u>Id</u>.

**Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c).  "[T]he requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anthes v. Transworld Systems, Inc.</u>, 765 F. Supp. 162, 165 (Del. 1991) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322-24 (1986).  Once the movant has met its burden, the onus is on the nonmovant to establish that there is a genuine issue of material fact. <u>Id</u>. at 324.  In order to meet this burden, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see <u>Celotex</u>, 477 U.S. at 324.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. <u>Anderson</u>, 477 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250.  On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id</u>. at 249-50 (citations omitted).

Discussion

**Motion to Supplement Answer**

Defendants seek to file a supplemental answer asserting an affirmative defense and counterclaim based on the settlement of the case at the mediation.  Specifically, Defendants seek to add the affirmative defense of settlement and release and a counterclaim for specific performance

of the settlement agreement.  Plaintiffs argue that the court lacks jurisdiction over the counterclaim

for three reasons: 1) Defendants have failed to allege an amount in controversy greater that $75,000;

2) no federal question is present and 3) the counterclaim is outside the bounds of supplemental

jurisdiction. Defendants appear to concede that the court lacks jurisdiction over the counterclaim

independent of the primary action and relies solely on supplemental jurisdiction.

Supplemental jurisdiction is governed by 28 U.S.C. §1367(a), which provides:

in any civil action of which the district courts have original jurisdiction, the district
courts shall have supplemental jurisdiction over all other claims that are so related
to claims in the action within such original jurisdiction that they form part of the
same case or controversy under Article III of the United States Constitution.

Section 1367(c) gives the court discretionary authority to decline to exercise such jurisdiction.  It

provides that:

(c) The district courts may decline to exercise supplemental jurisdiction over
a claim under subsection (a) if --

(1)  the claim raises a novel or complex issue of State law,

(2)  the claim substantially predominates over the claim or claims
over which the district court has original jurisdiction,

(3)  the district court has dismissed all claims over which it
has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons
for declining jurisdiction.

Plaintiffs argue that the facts surrounding the negotiation and execution of the Memorandum

of Terms (the "Agreement") occurred two years after the Loans were entered into and are totally

separate from the facts supporting the underlying claims.  Defendants argue that a number of courts

have recognized that a district court has supplemental jurisdiction over claims related to the

settlement of federal claims pending before it.

Neither party has presented an appellate case that addresses the issue presently before the court. Plaintiffs reference to Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994) and Peacock v. Thomas, 516 U.S. 349 (1996), is misplaced. These Supreme Court cases addressed the issue of whether a district court retains ancillary jurisdiction over a settlement agreement where the underlying case had been dismissed – clearly not the issue before the court. Two Ninth Circuit cases cited by Defendants for the proposition that a district court has supplemental jurisdiction over counterclaims alleging breach of a settlement agreement do not address the issue at all. To the contrary, these cases were cited by a district court as authority for the idea that "in diversity actions and in federal questions actions in which a federal court is exercising supplemental jurisdiction over state claims, federal courts apply the choice-of-law rule from the forum in which the court is located." Tseng v. Home Depot, USA, Inc., 2006 WL 1587413 at *3 (W.D. Wash 2006) citing Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002); Paracor Finance, Inc., v. General Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir. 1996). Finally, the fact that in TNT Marketing, Inc., v. Agresti, 796 F.2d 276 (9th Cir. 1986), the Ninth Circuit allowed a district court to enforce a stipulated judgment which included the terms of the settlement between the parties, is not relevant to this case where no judgment has been entered.

Of the district court cases cited by the parties, the court finds that Tseng is most similar to the case at hand.[3] There, the Washington district court issued an order of dismissal after being

_____

[3]In Amboy Nat. Bank v. General-U.S. Branch, 930 F.Supp. 1053 (D.N.J. 1996) and Smith v. Woodward, 2003 WL 23537985 (D.Or. 2003), the settlement agreements before the court were signed by the parties before the litigation was commenced. The court in Hull v. Rothhammer Intern., Inc., 2006 WL 988818 (N.D. Cal 2006), considered a settlement agreement that had, nearly ten years earlier, resulted in the stipulated dismissal of patent infringement action between the same parties.

*{SIB}*

notified by the parties that the case had settled.  The order allowed the parties to reopen the action within 60 days if the settlement agreement was not perfected. Tseng, 2006 WL 158743 at *2.  The plaintiff reopened the case in a timely manner, and the defendants asserted counterclaims of breach of contract and breach of good faith and fair dealing based on plaintiff's breach of the oral agreement to sign the settlement agreement. Id.  The court denied the plaintiff's motion for judgment on the pleadings with regard to the counterclaims finding that the oral settlement agreement was not void under the statute of frauds defense raised by the plaintiff. Id. at *5.

The court in Tseng did not address the issue of whether it had supplemental jurisdiction over the counterclaims but clearly asserted such jurisdiction. This court finds no reason not to do the same.  This action was never dismissed and the facts surrounding the negotiation and execution of the Agreement are closely related to the facts relevant to the Loans.  The court finds that it has supplemental jurisdiction over the counterclaims. Defendants' motion for leave to file a supplemental answer should be granted.

**Motion for Summary Judgment**

Defendants ask the court to enter an order requiring them to pay the settlement consideration, decreeing that Plaintiffs have reaffirmed the Loan on the existing terms, with the first payment due on the first due date following the Court's decision and dismissing all claims against the Defendants. In other words, Defendants seek specific performance of the Agreement.  Plaintiffs contend that an essential term of the Agreement is missing or ambiguous and that, as a result, the remedy of specific performance is not available.

Before there can be a valid contract, there must be a meeting of the minds as to all of its terms, nothing can be left for future negotiation, and if any portion of the contract is not agreed

upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract. Phillips v. Johnson, 266 Or. 544, 555 (1973). Likewise, for a party to be entitled to specific performance, a contract must be definite in all material respects, with nothing left for future negotiation. Kaiser Foundation Health Plan v. Doe, 136 Or.App. 566, 574 (1995), adhered to as modified, 138 Or. App. 428, rev. denied, 324 Or. 394 (1996) (quoting Booras v. Uyeda, 295 Or. 181, 191-92 (1983)).

Oregon courts subscribe to the objective theory of contracts which requires the consideration of evidence of the parties intent shown either through the communications or actions of the parties. Real Estate Loan Fund v. Hevner, 76 Or.App. 349, 354,(1985). In determining whether a contract exists, Oregon courts examine the parties' objective manifestations of intent, measured by whether a reasonable person would construe a promise from the words and acts of the other. Wooton v. Viking Distributing Co., Inc., 136 Or. App. 56, 59 (1995). As the Oregon Court of Appeals recently explained this "objective theory of contracts":

> That means that whether the parties entered into an agreement does not depend on whether the parties had the same subjective understanding of their agreement, that is, on whether their "minds met" on the same understanding. Rather, it depends on whether the parties agreed to the same, express terms of the agreement, and on whether those terms constitute an enforceable agreement.

City of Canby v. Rinkes, 136 Or. App. 602, 611 (1995), rev. denied, 322 Or. 489 (1996).

When the facts are all agreed upon, the determination of whether a contract exists is a question of law. See Real Estate Loan Fund, 76 Or.App. at 355 (finding issue of existence of contract to be question of law). However, where the parties dispute whether they intended a contract and both parties have a reasonable belief as to their position, then the trier of fact must resolve the dispute. Pyle v. Wolf Corp., 354 F. Supp. 346 (D.Or. 1972); Far West Reforesters, Inc. v. Oregon,

61 Or.App. 138, 141-42 (1982); Waverly Constr. Co., Inc. v. Gold Inv. Co., 60 Or. App. 101, 103, n.1 (1982) (meeting of minds was question of fact).

In the Agreement, the parties clearly contemplated the creation of a second document that would set forth the settlement terms in much greater detail.  This alone does not support a finding that the Agreement is not enforceable.  First, the parties specifically provided that the Agreement was an enforceable document.  Second, the basic principle of contract law  – that there must be a "meeting of the minds" between the parties as to all terms before a contract is created – applies equally to situations where parties enter into preliminary agreements hoping to consummate a final deal.  "'It is indeed competent for parties to enter into a preliminary agreement looking to the execution of a consequent one in the future. * * * But in all cases the minds of the parties must meet on the terms not only of the present convention, but also as to those of the covenants yet to be executed.'" Slayter v. Pasley, 199 Or. 616, 628 (1953)(citing Holtz v. Olds, 84 Or. 167, 578 (1917). Nothing can be left for future negotiation. Id.  Accordingly, the primary issue before the court is whether the Agreement reflects a meeting of the minds of the parties and contains all essential terms of the bargain.

The problematic provision provides for "Reaffirmation of loan on existing terms.  First payment due on first payment date due under note after final documents." Redding Decl., Exhibit 1.  Plaintiffs claim that they understood the language to mean that the Loan would be reaffirmed as of the date of the first payment due date and that no interest would accrue until that date.  In other words, the Loan would start anew on the date of the first payment with only the term of the Loan being affected by the litigation.  Defendants assert that the only reasonable interpretation of the provision is that the Loan is reaffirmed on the existing terms, including payment of interest during

the time the litigation was pending.[4] Under this construction, Plaintiffs would pay all interest accruing on the Loan from July 2005, the date of the notice of rescission and the last date any payments were made on the Loan.  A third, and more literal, interpretation of the language is that the Loan is reaffirmed as of it's original date, Plaintiffs are allowed to live in their residence free of any monthly mortgage payments until after the final settlement documents were signed, interest accrues from the original date of the Loan and Plaintiffs end up paying dramatically more for their residence than they ever contemplated.  Another plausible construction is that the Loan was reaffirmed as of the date the Agreement was signed with interest accruing as of July of 2006.[5]

It is clear that, in the absence of a date upon which the reaffirmation of the Loan would be effective and  interest would begin to accrue, the Agreement is subject to numerous, reasonable interpretations.  The date upon which interest would accrue is an essential term of the Agreement. The parties differing opinions on what that date is creates a genuine issue of material fact with regard to whether there was a meeting of the minds between the parties.

This finding is further supported by the statements made by each of the parties to the mediator.  Plaintiffs told the mediator that they would not agree to pay any accrued interest. Defendants told the mediator that Plaintiffs' decision not to apply the money collected in their attorney's trust account would result in Plaintiffs paying interest on interest and huge balloon

---

[4]This interpretation of the disputed language appears to provide for a July 2005 "reaffirmation" date.  However, the draft of the final settlement documents prepared by Defendants provides for an August 9, 2006, reaffirmation date with interest accruing from the rescission date (which is July 2005) which seems internally inconsistent.

[5]It is interesting to note that the parties do not disagree that the principal would accrue as of July 2005 and would be added to the principal balance of the Loan at the time the first payment was due.  This is not consistent with the literal construction of the phrase "reaffirmation of existing loan."

payments upon maturity of the Loan.  It appears that the mediator did not share this information with the other party.

Immediately after the negotiations ended and the parties believed they had a settlement, the mediator left and the parties jointly prepared the Agreement.  Defendants argue that Plaintiffs' failure to complain about the payment of accrued interest at this time is evidence that they had agreed to such term.  However, Plaintiffs did not understand the Agreement to require the back payment of accrued  interest and, therefore, had no reason to object.  Plaintiffs could just as easily argue that because Defendants did not object to the lack of accrued interest in the Agreement, they agreed to that term.  The evidence of the communications between the parties after the execution of the Agreement and during the drafting of the final settlement documents also supports the conclusion that the parties had dramatically different opinions with regard to when interest would accrue under the "reaffirmed" Loan.

The parties have offered two different, yet reasonable, interpretations of the language at issue in the absence of a specified date on which the reaffirmation would be effective or when interest would start to accrue.   As a result, a genuine issue of material fact exists with regard to whether the parties ever had a meeting of the minds and whether the Agreement contained all terms essential to the creation of a contract.  This resolution of this factual issue must be made by the trier of fact, not the court.

Defendants seek the dismissal of Countrywide as a defendant.  Defendants assert that Accredited repurchased the Loan from Countrywide and, therefore, Countrywide has no further interest in this litigation.  The Act provides a cause of action against a subsequent assignee of the original loan "only if the violation for which such action or proceeding is brought is apparent on the

face of the disclosure statement * * *." 15 U.S.C. §1641(a).  If Countrywide is liable under the Act for knowingly purchasing a loan which violates the provisions of the Act, selling the loan back to the original lender does not vitiate Countrywide's obligations under the Act to Plaintiffs. Defendants' motion to dismiss Countrywide should be denied.

<u>Conclusion</u>

Defendants' motion (42) for leave to file a supplemental answer should be GRANTED and Plaintiffs should be given 20 days to file a response to the counterclaim.  Defendants' summary judgment motion (47) seeking specific performance should be DENIED.  Defendants' motion to dismiss Countrywide, found in their motion for summary judgment (47), should be DENIED.

<u>Scheduling Order</u>

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due **February 28, 2007**.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

DATED this 12th day of February, 2007.


          /s/ Donald C. Ashmanskas
          DONALD C. ASHMANSKAS
          United States Magistrate Judge