IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARK BOUWMAN and TATYANA BOUWMAN, husband and wife,<br><br>                 Plaintiffs,<br><br>    v.<br><br>RBC MORTGAGE COMPANY, an Illinois corporation, ACCREDITED HOME LENDERS, INC., a California corporation, COUNTRYWIDE HOME LOANS, INC., a New York corporation, and SPECIALIZED LOAN SERVICING, LLC, a Delaware corporation,<br><br>                 Defendants. | CV 05-1560-AS<br><br>ORDER AND OPINION |

MARSH, Judge:

Magistrate Judge Ashmanskas (Judge Ashmanskas) filed his Findings and Recommendation (Doc. #66) on February 12, 2007. The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). When either party objects to any portion of the Magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the Magistrate's report. See 28 U.S.C. § 636(b)(1)(C); McDonnell Douglas Corp. v. Commodore Business Machines, Inc., 656 F.2d 1309, 1313 (9th Cir. 1981), cert. denied, 455 U.S. 920 (1982). Defendants filed timely objections to portions of Judge Ashmanskas' Findings and Recommendation. Accordingly, I have conducted a *de novo* review of this case. At the outset, I adopt Judge Ashmanskas' recommendation, which plaintiffs did not object to, to grant defendants' motion for leave to file a supplemental answer (Doc. #42).

1- OPINION AND ORDER

**Background**

This is a consumer fraud case arising out of a mortgage refinance. In April 2004, plaintiffs obtained a first mortgage from RBC Mortgage Company (RBC). In September 2004, an agent of RBC, Natasha Anishchenko, convinced plaintiffs to refinance into a first and second mortgage through Accredited Home Lenders Inc. (Accredited). These new loans required a higher monthly payment, higher interest rates, and prepayment penalties. Plaintiffs allegedly were not provided with notice of their right to rescind these loans, as required by 15 U.S.C. § 1635(a), under the Truth in Lending Act (TILA). On July 15, 2005, plaintiffs notified defendants of their intent to rescind. When defendants failed to accept plaintiffs' notice of rescission and to return the money plaintiffs demanded, plaintiffs filed a claim in state court, which defendants timely removed to this court.

In July 2006, all parties except RBC, and including First American Title, the title insurance company to whom defendants had tendered their defense, participated in a settlement conference, mediated by Susan Hammer. At the conclusion of settlement talks, after the mediator had left, these parties executed a Memorandum of Essential Terms (the memo), in handwriting, which states the following:

> $24,793 statutory damages to plaintiffs and their attorney (the amount paid on the loan prior to rescinding).
>
> $30,000 in attorney fees payable to Hope with 1099 to her.
>
> Lender to use best efforts to effectuate post rescission demand credit repair subject to Specialized/ Countrywide.
>
> Payment w/in 14 days of final documents.

2- OPINION AND ORDER

>   Release of Lenders
>> Covenant not to sue First American
>> Dismissal w/ prejudice of lenders
>
> Reaffirmation of loan on existing terms.  First payment due on first payment due date under note after final documents.
>
> This agreement is enforceable and will be followed by a final agreement.

There are four signatures at the bottom; two are the plaintiffs', one is plaintiffs' attorney Mark Griffin's, and the fourth appears to be that of Allen Brickley, Attorney for First American.  At oral argument on the objections to Judge Ashmanskas' Findings and Recommendation (oral argument on the objections), attorneys for all parties agreed that they felt a settlement had been reached and the memo set forth that settlement.

Following the alleged settlement agreement, defendants' counsel submitted to plaintiffs' counsel a draft of the final documents contemplated by the memo, entitled "Settlement Agreement and General Release" (the draft agreement).  The third provision in the draft agreement states,

> The Bouwmans hereby revoke their notice of rescission of the Bouwman Loans, the validity of which is disputed by the Lender Defendants, and reaffirm the obligations on the First Note, First Trust Deed, Second Note, and Second Trust Deed, as described and identified above, copies of which are attached hereto as Exhibits 1 through 4.  This reaffirmation shall be effective as of August 9, 2006.  The Bouwmans acknowledge and agree that as of September 1, 2006: (a) the principal balance due under the terms of the First Note is $169,096.85, and interest shall accrue on this principal balance from the Rescission Date at the adjustable interest rate specified in the First Note; (b) the principal balance due under the terms of the Second Note is $31,469.63, and interest shall accrue on this principal balance from the Rescission Date at the interest rate specified in the Second Note; (c) the Bouwmans shall make regular monthly payments on the First Note and Second Note commencing September 1, 2006, and on the first date of each month thereafter, in the amounts set forth in the First Note and Second Note, respectively, with payment in full due on the maturity dates specified in the First Note and Second Note, respectively; (d) the First Trust Deed and Second Trust Deed remain in full force and

3- OPINION AND ORDER

>effect and continue to be valid subsisting first and second liens, respectively, encumbering the Property as security for all amounts owing under the First Note and Second Note, respectively, and all obligations owing under the First Trust Deed and Second Trust Deed, respectively.

After several weeks of electronic and telephonic communication between counsel for both sides regarding this and other language in the draft agreement, plaintiffs indicated to defendants that they did not agree, at the settlement conference, to pay interest that accrued on the loan during the pendency of the litigation. Rather, plaintiffs contend that by reaffirming the loan "on existing terms" they were agreeing to restart the loan as of the reaffirmation date, with interest beginning to accrue on the first payment due date, which would be specified in the final settlement documents.

Defendants filed a motion for summary judgment (Doc. # 47), which includes in it a Motion for Specific Enforcement of the settlement agreement, and Motion to Dismiss Countrywide as a party. According to defendants, by reaffirming the loan on "existing terms," plaintiffs were agreeing to pay interest as contemplated by the original promissory note, which states that interest "will be charged on unpaid principal until the full amount of principal has been paid." Therefore, defendants contend that the parties agreed that interest would have accrued on the principal since the date of rescission, even though payments would not be due until after the final settlement documents were signed.

Judge Ashmanskas recommended denial of the defendants' Motion for Summary Judgment, based upon his finding that there exists a genuine issue of material fact whether a contract was even formed by the memo, because if essential terms were missing there may not have been a "meeting of the minds between the parties." Judge Ashmanskas also recommended

4- OPINION AND ORDER

denying defendants' Motion to Dismiss Countrywide as a defendant, based upon his finding that there exists a genuine issue of material fact whether the violation for which plaintiffs' original action was brought was apparent on the face of the disclosure statement, in which case Countrywide would be liable under 15 U.S.C. § 1641(a), for knowingly purchasing a loan that violates the provisions of TILA.

According to defendants, Judge Ashmanskas misapplied Oregon contract law to find a contract may not exist between the parties, rather than finding that the parties manifested their assent to the express language in the memo, and applying the plain meaning of that language. Defendants also contend that Judge Ashmanskas erred by recommending that Countrywide should not be dismissed.

Plaintiffs ask this court to adopt Judge Ashmanskas' Findings and Recommendation. In their response to defendants' objections (Doc. #68) plaintiffs state that in addition to the reasons given by Judge Ashmanskas, another reason this court should adopt the recommendation to deny defendants' motion for summary judgment is that a question exists as to whether defendants have standing to request specific performance of the settlement agreement because only the attorney for First American Title signed the memo.

As a preliminary matter, I do not find any merit to this argument as plaintiffs admitted at oral argument on the objections that they believed they had settled all claims against all defendants, except RBC Mortgage, at the culmination of settlement talks. All parties recognized that First American Title took part in the settlement conference on behalf of all objecting defendants, having agreed to pay any settlement reached under its indemnification policy.

5- OPINION AND ORDER

Accordingly, there is not an issue whether defendants are parties to the settlement agreement. They are parties.

## Standards

### I.    Summary Judgment

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." Id. at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." Balint v. Carson City, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. United Steelworkers of Am. v. Phelps Dodge Corp., 865 F2d 1539, 1542 (9th Cir), cert denied, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F2d 626, 630 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." Id. (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 631.

### II.    Contract Formation

Oregon subscribes to the objective theory of contracts. Real Estate Loan Fund v. Hevner, 76 Or. App. 349, 354 (1985). When the facts are not in dispute, the determination of whether a contract exists is a question of law. Key West Retaining Sys., Inc. v. Holm II, Inc., 185 Or. App. 182, 188 (2002), rev. denied, 335 Or. 402 (2003). "In determining whether a contract exists and what its terms are, we examine the parties' objective manifestations of intent, as evidenced by their communications and acts." Ken Hood Constr. v. Pacific Coast Constr., 201 Or. App. 568, 578 (2005), adhered as modified on reconsideration by 203 Or. App. 768, rev. denied, 341 Or. 366 (2006). Thus, the determination of whether a contract exists "does not depend on whether the parties had the same subjective understanding of their agreement...it depends on whether the parties agreed to the same, express terms of the agreement, and on whether those terms constitute an enforceable agreement." City of Canby v. Rinkes, 136 Or. App. 602, 611 (1995), rev. denied, 322 Or. 489 (1996).

It is the court's province to interpret and give effect to all words in the instrument, and to not insert words that the parties did not include. ORS 42.230; Holloway v. Republic Indemnity Co. of America, 341 Or. 642 (2006). If a construction is inconsistent with any express terms of the agreement, it is unreasonable, as a matter of law. Koch v. Spann, 193 Or. App. 608 (2004). If an express term is subject to only one reasonable interpretation, the court must give effect to that meaning as a matter of law. Youngman v. Parrot, 325 Or. 358, 361 (1997). If an express term is subject to more than one reasonable interpretation, in context, it is ambiguous. Pacific First Bank v. New Morgan Park Corp., 319 Or. 342, 347-48 (1994).

## Discussion

**I.     I modify the Findings and Recommendation to GRANT defendants' motion for summary judgment and specific enforcement.**

Judge Ashmanskas found a genuine issue of material fact "whether there was a meeting of the minds between the parties," and "whether the Agreement contained all terms essential to the creation of a contract."  Doc. 66 at 11, 12.  He found that the parties had offered two different, yet reasonable, interpretations of the meaning of one of the provisions in the memo, which states, "Reaffirmation of the loan on existing terms.  First payment due on first payment due date under note after final documents."  Redding Dec., Ex. 1.  In addition, Judge Ashmanskas found this provision was open to other reasonable interpretations.  He wrote:

> Plaintiffs claim that they understood the language to mean that the Loan would be reaffirmed as of the date of the first payment due date and that no interest would accrue until that date.  In other words, the Loan would start anew on the date of the first payment with only the term of the Loan being affected by the litigation.  Defendants assert that the only reasonable interpretation of the provision is that the Loan is reaffirmed on the existing terms, including payment of interest during the time the litigation was pending.  Under this construction, Plaintiffs would pay all interest accruing on the Loan from July 2005, the date of the notice of rescission and the last date any payments were made on the Loan.  A third, more literal, interpretation of the language is that the Loan is reaffirmed as of it's [sic] original date, Plaintiffs are allowed to live in their residence free of any monthly mortgage payments until after the final settlement documents were signed, interest accrues from the original date of the Loan and Plaintiffs end up paying dramatically more for their residence than they ever contemplated.  Another plausible construction is that the Loan was reaffirmed as of the date the Agreement was signed with interest accruing as of July 2006.

In their objection to the Findings and Recommendation, defendants argue that Judge Ashmanskas wrongly applied Rinkes, in which the Oregon Court of Appeals held that when parties manifest their assent to express language, the fact they hold different understandings as to the meaning of that language does not preclude contract formation.  136 Or. App. 611.  According to defendants, even if the parties did not have a "meeting of the minds" regarding the

8- OPINION AND ORDER

meaning of the terms in the above cited provision, the settlement agreement is still enforceable. In defendants' words, "even if interest accrual is an essential term, the parties reached an agreement as to that term...demonstrated by their assent to the term 'reaffirmation of loan on existing terms.'"  Doc. #67 at 11.

Plaintiffs contend that even though they believed they had reached an agreement with defendants at the culmination of settlement talks, and that the language employed in the memo captured their subjective understanding of that agreement, during negotiations over the precise language to be included in the final settlement documents they discovered other objectively reasonable ways of reading the language in the memo, such as the way defendants read it. Therefore, according to plaintiffs, the language is ambiguous, and renders the settlement agreement unenforceable.

Specifically,  plaintiffs contend the words "reaffirmation of loan on existing terms" could mean reaffirmation of the terms in the original note, or reaffirmation "of the terms of the note as suspended by the Truth in Lending Act."  Transcript at 17.  At oral argument on the objections plaintiffs' counsel explained:

> I think that what makes this different than the way that mortgage notes usually operate is the fact that we were in a context of Truth and Lending rescission, which by operation of law has an effect on the way that a note is read and enforced.  The fact that this loan had been rescinded under Truth in Lending in 2005 meant that the note was really not in operation anymore.  Once a loan is rescinded under the Truth in Lending Act the borrower no longer has an obligation to pay any interest.

Transcript (Trans.) at 16; see also 15 U.S.C. § 1635(b)(stating in relevant part, "a lender has no right to collect interest on a mortgage once a borrower has rescinded.").  Thus, plaintiffs claim that one of the "existing terms" at the time of reaffirmation was that plaintiffs did not owe interest to defendants.  Plaintiffs argue the other disputed term – "first payment due on first

9- OPINION AND ORDER

payment due date under note after final documents" – can be read objectively to mean the "first payment" of interest is due on the first payment due date, rather than the first payment under the reaffirmed loan was due on the first payment due date.

At oral argument on the objections, the parties agreed there is no dispute that Oregon adheres to the objective theory of contracts. Thus, this court must examine the parties' objective manifestations of intent to determine whether they assented to be bound by the settlement agreement. In light of admissions by both sides that they believed they had reached a settlement agreement when they drafted the memo, reinforced by language in the memo stating, "[t]his agreement is enforceable," I find that an enforceable settlement agreement was reached in this case. Accordingly, I modify Judge Ashmanskas' finding, and conclude that no genuine issue of material fact remains to be decided before the court can determine whether a settlement agreement was reached in this case.

I further modify Judge Ashmanskas' finding that the express terms of the settlement are subject to more than one reasonable interpretation. To the contrary, I find the terms of the settlement, as set out in the memo, are unambiguous. For the reasons that follow, I find the terms, "reaffirmation of loan on existing terms" and "first payment due on first payment due date" to mean that plaintiffs reaffirmed the original loan on its existing terms, thereby agreeing to pay all interest and principal they failed to pay since the date of rescission. During this period plaintiffs deposited the regular payments into a client trust account. This money was due and owing on the date the loan was reaffirmed, however, defendants agreed to allow plaintiffs to retain it, even though plaintiffs would incur balloon payments toward the end of the loan as a result. Plaintiffs were to resume regular monthly payments on the loan beginning on the first

10- OPINION AND ORDER

payment due date, which would be specified in the final documents.

I find plaintiffs' construction to be an unreasonable interpretation of the express terms of the agreement. It is not objectively reasonable to construe the terms of the settlement agreement in the context of a TILA rescission, as plaintiffs urge me to do. The proper context in which to construe the terms of a settlement agreement is the settlement context, where parties attempt to resolve their differences by exchanging something of value (such as an act, a forbearance, or a return promise). See Black's Law Dictionary 300-01 (7th ed. 1999)(defining consideration). Here, as indicated by the memo, plaintiffs released the lenders from the rescission proceedings, agreed not to sue First American Title, and agreed to reaffirm the loan. In exchange, defendants promised to pay $24,793 in statutory damages, $30,000 in attorney fees, to use best efforts to repair plaintiffs' credit, and to reaffirm the loan. That defendants were not entitled to collect interest on the loan during the pendency of the rescission action has no bearing in the settlement context, where plaintiffs agreed to forbear their right to rescission under TILA. Thus, 15 U.S.C. § 1635(b) does not guide my interpretation of the terms of the settlement agreement, as expressed in the memo.

If plaintiffs wanted to salvage the loan, but with different terms, they should have clearly communicated those different terms to defendants, and included them in the memo. It is not the province of this court to insert terms into an agreement that the parties did not include. Contrary to Judge Ashmanskas' finding that plaintiffs had no reason to object to the lack of a term specifying that they did not owe interest from the date of rescission, I find they had every reason to do so, precisely because the presumption under the normal course of dealing and the terms of the original note was that interest never ceases to accrue. These terms, not plaintiffs'

11- OPINION AND ORDER

unexpressed meaning, serve to fill the gaps in the express terms assented to by both parties.

I further concur with defendants that Judge Ashmanskas may have misapprehended the mechanics of the attempted rescission and reaffirmation, based on his notation that the dates of rescission and reaffirmation in defendants' draft agreement were internally inconsistent[1]. It is not inconsistent to have a reaffirmation date – the date the parties were to sign the final settlement papers – of August 9, 2006, and a rescission date/ interest accrual date of July 2005. As defendants explain, the reaffirmation date is "simply the effective date of the [settlement] agreement," whereas the rescission date is the date plaintiffs stopped paying interest, and thus, the date from which interest is still owing.

Finally, the parties' communications and actions support my finding that the plaintiffs assented to paying interest from the date of rescission. First, as stated above, plaintiffs made monthly mortgage payments into a client trust account after notifying the defendants of their intent to rescind, in July 2005. Why would they do this if they didn't believe they would have to pay interest in the event the loan was reaffirmed or they did not prevail in their rescission action? Plaintiffs' counsel failed to provide a persuasive alternative explanation. When asked about this at oral argument on the objections, plaintiffs' counsel said, "...our purpose in keeping the money in the trust account was that it was interest primarily." Trans. at 22.

Second, statements made by plaintiffs to the mediator[2], such as that they would prefer to keep the money they paid into the client trust account, with the intent of possibly refinancing

---

[1] See Doc. #66 at 11, n 4 & 5.

[2] At oral argument on the objections the parties agreed that, notwithstanding Local Rule 16.4(g)(1), the court may consider statements made by the parties to the mediator.

12- OPINION AND ORDER

after the pre-payment penalty expiration date, is a communication that suggests plaintiffs believed they would owe this money to the lender if the loan was reaffirmed.

Third, plaintiffs' counsel's failure to object to the explicit language in paragraph three of the draft agreement for approximately three weeks into discussions with defense counsel over the details of the draft agreement strongly supports defendants' argument that it wasn't until plaintiffs' counsel reviewed amortization tables that they truly understood the consequences of not paying over the money in the client trust account upon reaffirmation, and decided to revoke the settlement agreement. I am not persuaded by plaintiffs' counsels' explanation in their reply to the objections that they "did not realize that the defendants had included language in the agreement that required the Bouwmans to pay accrued interest" because defendants did not set out the dollar value of the interest owed. As recited in the background section, above, the language in the third paragraph of the draft agreement plainly states – "interest shall accrue on this principal balance from the Rescission Date at the adjustable interest rate specified in the First Note," and "interest shall accrue on this principal balance from the Rescission Date at the interest rate specified in the Second Note."

Further, plaintiffs' counsel admitted at oral argument on the objections that during the three weeks that passed before objecting to this language, several times defendants' counsel "brought up to me the possibility of my clients paying the money that was in trust over to the lenders." Trans. at 38. According to plaintiffs' counsel, she did not realize defendants' counsel was referring to the principal *and* interest in the trust account. I am not persuaded by this explanation. Instead, I find this omission, or lack of objection to paragraph three of the draft agreement, further manifestation of plaintiffs' assent, at the time the settlement was reached, to

13- OPINION AND ORDER

paying interest from the date of rescission.

Based on the foregoing, I do not find a genuine issue of material fact remains to be decided before the court can determine the objective meaning of the express terms of the settlement agreement. Accordingly, summary judgment is granted in defendants' favor.

**II.     I adopt the Recommendation to DENY defendant's motion to dismiss Countrywide as a defendant, but MODIFY, in part, the Findings upon which it was based.**

Judge Ashmanskas recommended not dismissing Countrywide as a defendant on the basis of assignee liability under 15 U.S.C. § 1641(a), which states that an action may be brought against an assignee [i.e. Countrywide] of a creditor [i.e. Accredited] if the violation is "apparent on the face of the disclosure statement." This was a reasonable interpretation of the parties' pleadings on this matter. However, at oral argument on the objections, plaintiffs clarified that they do not claim Countrywide is liable as an assignee under Section 1641(a) for knowingly purchasing a loan that violates the disclosure provisions of TILA. Instead, plaintiffs claim Countrywide is liable for failing to properly respond to plaintiffs' notice of rescission within 20 days, as required by 15 U.S.C. § 1635(b)(stating, "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."). See also Shepeard v. Quality Siding & Window Factory, Inc., 730 F. Supp. 1295, 1301 n. 8 (D. Del. 1990). Accordingly, it does not matter whether the alleged violation was apparent on the face of disclosure documents (the parties agree it was not), under Section 1641(a).

Still, defendants maintain Countrywide should be dismissed because Accredited

14- OPINION AND ORDER

repurchased the loans, so Countrywide has no further interest in the loans and it is without power to effect a rescission at this time. However, as Judge Ashmanskas found, in part, selling the loan back to the original lender does not vitiate the obligation Countrywide had to plaintiffs at the time it held the loan and received notification of plaintiffs' intent to rescind. Accordingly, I modify the Findings and Recommendation, to find that Countrywide would have been liable to plaintiffs under 15 U.S.C. § 1635(b), rather than 15 U.S.C. § 1641(a), in the event of a rescission. However, since summary judgment in defendants' favor also applies to Countrywide, I modify Judge Ashmanskas' finding in the event an appeal is taken.

/ / / / /

/ / / / /

/ / / / /

/ / / / /

/ / / / /

## CONCLUSION

I ADOPT the Recommendation to GRANT defendants' motion (Doc. #42) for leave to file a supplemental answer. I MODIFY the Findings and Recommendation, in part, and GRANT defendants' motions for summary judgment and specific enforcement (Doc. #47), and DENY defendants' motion to dismiss Countrywide as a defendant. (Doc. #47).

IT IS SO ORDERED.

DATED this _9_ day of May, 2007.

                                        _/s/  Malcolm F. Marsh
                                        Malcolm F. Marsh

15- OPINION AND ORDER

United States District Judge

16- OPINION AND ORDER